UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARMANDO MACIAS-ORTIZ,

    Petitioner.

v.                                                               Case No. 8:09-cv-1494-T-24 TGW
                                                                                  8:07-cr-0086-T-30 TGW

UNITED STATES OF AMERICA,

    Respondent.

_____/

## **O R D E R**

The Court now considers Petitioner Armando Macias-Ortiz's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his allegedly illegal sentence. The Government opposes the motion.

### **BACKGROUND**

A grand jury returned an indictment on March 14, 2007, charging Macias-Ortiz with (1) conspiring to possess with intent to distribute and to distribute more than 500 grams of cocaine,[1] (2) possessing with intent to distribute more than 500 grams of cocaine,[2] and (3) unlawfully entering the United States in violation of 8 U.S.C. §§ 1325(a)(1) and 1329. Macias-Ortiz pled not guilty and proceeded to trial. He was convicted by a jury on all counts, and on October 31,

---

[1] These acts allegedly violated 21 U.S.C. §§ 846 and 841(a)(1).

[2] These acts allegedly violated 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2.

1

2007 was sentenced to 63 months in the Bureau of Prisons. He appealed his sentence, and the Eleventh Circuit affirmed on June 3, 2008. Macias-Ortiz then filed a timely motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.[3]

The first two counts against Macias-Ortiz involved a drug deal between a confidential informant and the three co-defendants in this case.[4] On January 29, 2007, co-defendant Sergio Valencia-Soberanes agreed to meet the confidential informant at a Days Inn motel room in Bradenton, Florida. to complete a drug transaction. Valencia-Soberanes and Macias-Ortiz arrived at the Days Inn motel room with 994.3 grams of cocaine, and Valnecia-Soberanes carried a loaded semi-automatic pistol. After Valencia-Soberanes handed the informant the cocaine, law enforcement officers arrested him and Macias-Ortiz. In the parking lot outside, authorities also arrested Pedro Garcia-Mendoza, who was driving a car with 974.9 grams of cocaine hidden under a floor mat.

Because his offense involved more than 500 grams, but less than two kilograms, of cocaine, Macias-Ortiz had a base offense level of 26 under the United States Sentencing Guidelines.[5] The Court added another two levels to the base offense level because Macias-

---

[3] Macias-Ortiz filed his § 2255 motion on August 5, 2009 within one year of his conviction becoming final on September 3, 2008. See 28 U.S.C. § 2255(f). The Eleventh Circuit entered judgment in Macias-Ortiz's case on June 3, 2008 (Cr. Doc. 108), and Macias-Ortiz then had 90 days, or until September 3, 2008, to petition the U.S. Supreme Court to review his case. See Sup. Ct. R. 13. Having failed to seek review, his conviction became final on September 3.

[4] These facts are contained in the Presentence Investigation Report prepared by the U.S. Probation Office.

[5] U.S. Sentencing Guidelines Manual § 2D1.1(c)(7).

Ortiz's co-defendant possessed a firearm during the commission of the crime.[6] However, the Court subtracted two levels based on Macias-Ortiz's minor participation in the conspiracy.

At sentencing, Macias-Ortiz made three objections to the Presentence Report. First, he objected to the two level increase for possession of a firearm. Macias-Ortiz argued that he did not possess the firearm, and he did not know that co-defendant Valencia-Soberanes brought a firearm to the drug deal. At sentencing, Macias-Ortiz told the Court: "I knew about that pistol, that he had it. I knew it from before that time. But I didn't know that he was – – that he had it at that particular time." (Tr. at 14, ll. 12-15.) The Court overruled the objection, and found that a firearm was present at the crime and it was not clearly improbable that the firearm was connected to the crime.[7] (Tr. at 15-16.) The Court also found it foreseeable to Macias-Ortiz that Valencia-Soberanes would possess a firearm at the drug deal.

Next, Macias-Ortiz objected because he did not get the benefit of the safety valve under 18 U.S.C. section 3553(f). The Court found that Macias-Ortiz possessed a firearm and had not met the fifth condition, which required that he truthfully provide the Government all information and evidence that he had concerning the offense.

At sentencing, the Assistant United States Attorney told the Court that the Government believed Macias-Ortiz had not been truthful because Macias-Ortiz insisted that he did not know that Valencia-Soberanes was going to sell drugs and he did not know that Valencia-Soberanes had a gun on him during the drug deal. (Tr. at 17.) The prosecutor called the claim "a little bit far-fetched." Id. Macias-Ortiz and Valencia-Soberanes had spent the afternoon and evening,

---

[6] U.S. Sentencing Guidelines Manual § 2D1.1(b)(1).

[7] U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) cmt. 3.

3

including dinner, together. Before heading up to the Days Inn motel room, Valencia-Soberanes had left in the trunk of Macias-Ortiz's car a loaded magazine that matched the semi-automatic pistol he was carrying. Id. However, to test the veracity of Macias-Ortiz's statement, the Government arranged for Macias-Ortiz to take a polygraph test. Before the test, the Government said Macias-Ortiz told the polygraph examiner that, in fact, he knew Valencia-Soberanes was planning to deliver drugs that day and he knew Valencia-Soberanes had a gun on him at the Days Inn. (Tr. 17-18.) The Court found that Macias-Ortiz had not been truthful, and overruled his objection as to his failure to receive the benefit of the safety valve.

The Court sustained Macias-Ortiz's third objection regarding his minor role in the offense. The Court found that he was a minor participant in the crime and reduced his total offense level by two points.[8] Therefore, the Court found that Macias-Ortiz's total offense level was 26, criminal history I, range of imprisonment between 63 and 78 months. The Court sentenced Macias-Ortiz to 63 months.

## ANALYSIS

A prisoner in federal custody may move to attack his sentence under 28 U.S.C. § 2255 for four reasons: (1) the sentence violated the U.S. Constitution or federal law; (2) the Court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum sentence allowed by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

"Section 2255 does not offer recourse to all who suffer trial errors." United States v. Capua, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). "It is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised

---

[8] U.S. Sentencing Guidelines Manual § 3B1.2(b).

4

on direct appeal and would, if condoned, result in a complete miscarriage of justice." Id. Macias-Ortiz states three grounds as to why his motion should be granted: (1) his Fifth and Sixth Amendment rights were violated at sentencing because the Court enhanced his sentence for possession of a firearm; (2) the Court abused its discretion by not applying the safety valve at sentencing and failing to give a jury instruction on petitioner's drug addiction; and (3) counsel was ineffective.

## I. Ground One: The Court Did Not Violate Macias-Ortiz's Fifth or Sixth Amendment Rights at Sentencing

Macias-Ortiz argues that the Court violated his constitutional rights under the Fifth Amendment and Sixth Amendment by enhancing his sentence by two guideline levels by finding that a firearm was possessed during the crime. Because the jury did not find that Macias-Ortiz possessed a firearm or knew of his co-defendant's firearm, Macias-Ortiz argues that the Court cannot do so and has unconstitutionally increased his sentence without a jury finding these facts. He cites Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Booker, 543 U.S. 220 (2005), to support his argument. Macias-Ortiz's claim has no merit..

In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Although the jury was not asked to find and did not find that Macias-Ortiz possessed a firearm or knew that his co-defendant possessed a firearm, the Court's finding of this fact at sentencing did not increase Macias-Ortiz's penalty beyond the statutory maximum sentence—which in this case was 40 years. The Court sentenced Macias-Ortiz to 5 years and 3 months, well below the statutory maximum penalty for the crimes that the jury found Macias-Ortiz

5

had committed. Therefore, Apprendi does not apply and does not invalidate Macias-Ortiz's sentence.

In addition to being meritless, this ground of Macias-Ortiz's § 2255 petition is procedurally barred because he failed to raise the argument on direct appeal. McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001). "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal." Id. "This rule generally applies to all claims, including constitutional claims." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (internal citations omitted.) Macias-Ortiz did not raise his Apprendi claim on direct appeal,[9] and he has not raised any cause for his failure to do so or explained what prejudice, if any, resulted. Therefore, his claim is barred.

## II. Ground Two: The Court Did Not Abuse Its Discretion in Not Applying the Safety Valve at Sentencing or Failing to Give a Jury Instruction on Petitioner's Drug Addiction

Macias-Ortiz's second ground must also be denied for procedural and substantive reasons. Macias-Ortiz argues that the Court abused its discretion at sentencing by enhancing his base

---

[9] In its response, the Government does not raise procedural default as an affirmative defense. However, this does not preclude the Court from raising the issue. See Howard v. United States, 374 F.3d 1068, 1073 (11th Cir. 2004) (citing Gray v. Netherland, 518 U.S. 152, 165-66 (1996)) ("The government failed to raise the defense of procedural default in the district court, and the court did not bring it up either. In these circumstances, Gray v. Netherland . . . prevents the government from benefitting now from a defense it did not raise then."). See also Hartge v. McDonough, 210 Fed. Appx. 940, 944 n.3 (11th Cir. 2006).

The Government construed Macias-Ortiz's three grounds for relief "in essence" as one claim of ineffective assistance of counsel. (Doc. 10 at 7.) An ineffective assistance of counsel claim is not procedurally barred if raised for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 509 (2003). However, the Court does not read Macias-Ortiz's motion as one claim "in essence" based on ineffective assistance of counsel. Macias-Ortiz raised three grounds for relief. Admittedly, his claim of ineffective assistance rests, in part, on the errors he raises in the other two grounds.

6

guideline offense level by two levels for his co-defendant's possession of a firearm, by failing to grant Macias-Ortiz an offense level reduction under the safety valve provision, and by failing at trial to give a jury instruction regarding Macias-Ortiz's drug addiction.

All three of these arguments are procedurally barred. "Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003). Macias-Ortiz raised none of these claims on direct appeal and did not object at trial to the lack of a jury instruction concerning his drug addiction. Moreover, he has not established cause for the failure to raise these issues on direct appeal, and has not established prejudice. Therefore, these claims are barred.

In addition, none of these arguments have substantive merit. Sufficient evidence supported the Court's decision to apply a two-level enhancement to Macias-Ortiz's sentencing based on possession of a firearm. Even though Macias-Ortiz did not possess the firearm himself, the Court may apply the enhancement when a co-conspirator possessed the firearm. United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (citing United States v. Fields, 408 F.3d 1356, 1359 (11th Cir. 2005)). For the Court to do so, the Government must prove by a preponderance of evidence that (1) the co-conspirator possessed the firearm, (2) possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy, and (4) the defendant could reasonably foresee the co-conspirator's possession of the firearm. Id. In this case, law enforcement arrested Valencia-Soberanes with a firearm on him in a motel room after he had handed cocaine to the Government's confidential informant. The Government met its burden by a preponderance of evidence (1) by presenting evidence at trial that Valencia-Soberanes was a co-conspirator and possessed the firearm, (2) by presenting evidence that the gun furthered the

7

conspiracy because it provided Valencia-Soberanes with the means to protect himself and threaten others involved in the drug deal, (3) by convincing a jury beyond a reasonable doubt that Macias-Ortiz was guilty of conspiracy with Valencia-Soberanes, and (4) by presenting evidence both at trial and sentencing that Macias-Ortiz should have foreseen that Valencia-Soberanes would possess a firearm. Because guns are commonly brought to drug deals, Macias-Ortiz should have foreseen that Valencia-Soberanes, with whom he had spent the day, and who he knew carried a gun, would bring one to this drug deal.

The Court also did not abuse its discretion by denying Macias-Ortiz the benefit of the safety valve provision of 18 U.S.C. § 3553(f)(1)-(5). Although the Court found that Macias-Ortiz was a minor participant in the offense, this finding did not require the Court to apply the safety valve provision. The Court may only apply the provision when all five conditions under 18 U.S.C. § 3553(f)(1)-(5) have been met, including that the Defendant did not possess a firearm in connection with the offense and that the defendant truthfully provided the Government all information and evidence concerning the offense. The Government argued that Macias-Ortiz had not been truthful by initially telling prosecutors that he did not know that Valencia-Soberanes was carrying a gun. The Court agrees. Macias-Ortiz's own statement to the Court that he knew Valencia-Soberanes carried a gun in the past, the circumstances of his arrest with Valencia-Soberanes, his contradictory statement to the polygraph examiner, and the presence in Macias-Ortiz's car of a loaded magazine that fit Valencia-Soberanes' semi-automatic pistol support this finding. Thus, the Court did not abuse is discretion in denying Macias-Ortiz the benefit of the safety valve provision of 18 U.S.C. § 3553(f).

The Court also did not err in failing to give the jury an instruction about Macias-Ortiz's

drug addiction.  Macias-Ortiz offers no basis in the law for a jury instruction that would excuse his crime because of drug addiction.  Moreover, Macias-Ortiz did not propose any jury instruction at trial that addressed his drug addiction (Cr. Doc. 65), and does not offer one now.  This claim is frivolous.

### III. Ground Three: Macias-Ortiz Was Not Denied Effective Assistance of Counsel

Macias-Ortiz also argues that he was denied effective assistance of counsel, as guaranteed by the Sixth Amendment during trial and at sentencing.[10]  He argues his counsel was constitutionally ineffective by failing to oppose the enhancement for firearm possession, by failing to secure application of the safety valve provision of 18 U.S.C. § 3553(f), and by allowing him to cooperate with prosecutors both before and after trial.  His claim has no merit.

As he does at trial, "[a] defendant has a constitutional right to effective assistance of counsel at sentencing."  Jones v. United States, 224 F.3d 1251, 1259 (11th Cir. 2000) (internal citations and quotations omitted).  To determine whether counsel provided ineffective assistance at trial and at sentencing, the Court applies the standard set in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Jones, 224 F.3d at 1259.  In Strickland, the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel.  First, a defendant must demonstrate that his attorney's performance was deficient, which requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Id.  Second, a defendant must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be

---

[10] Macias-Ortiz's ineffective assistance of counsel claim is not procedurally barred even though he failed to raise it on direct appeal.  Massaro v. United States, 538 U.S. 500, 509 (2003).

9

trusted. Id. Macias-Ortiz must establish both prongs, and if he makes an insufficient showing as to one, the Court need not address the other prong in order to find that counsel was not ineffective. Id. at 697. In particular, a Court does not need to determine whether counsel's performance was deficient before examining prejudice suffered as a result of the alleged deficiencies.

In order to succeed on an ineffective assistance of counsel claim, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Judicial scrutiny of counsel performance must be highly deferential because it is tempting for a defendant to second-guess counsel's assistance after a conviction and adverse sentence. The reasonableness of an attorney's performance should be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Id. at 690. Macias-Ortiz carries a heavy burden, as reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

Simply showing that counsel erred or his performance was deficient is not sufficient. Id. at 691. Instead, the defects in counsel's performance must be prejudicial to the defense. Id. at 692. Therefore, under Strickland's second prong, Macias-Ortiz must establish that there is a reasonable probability that the results would have been different but for counsel's deficient performance. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Counsel for Macias-Ortiz was not ineffective. Counsel argued at sentencing that Macias-Ortiz should not be enhanced for possession of a firearm and that he should receive the benefit of

the safety valve. Although unsuccessful in those arguments, counsel did convince the Court that a minor role adjustment was appropriate. In addition, Macias-Ortiz's counsel was not ineffective for allowing him to cooperate before trial with the United States Attorney's Office in order to secure a plea agreement. An attorney faced with the circumstances of Macias-Ortiz's case should attempt to secure a plea agreement for his client, where doing so would be in the defendant's best interest. Although Macias-Ortiz rejected the Government's plea agreement, counsel's effort to secure a plea agreement—and convince him to accept it—does not constitute ineffective assistance of counsel. Indeed, in retrospect Macias-Ortiz may have been well served by his counsel's advice to plead.

Similarly, Macias-Ortiz's counsel was not ineffective for allowing Macias-Ortiz to speak with prosecutors after his conviction. Counsel arranged the interview hoping to win the Government's agreement to a sentencing reduction under the safety valve pursuant to 18 U.S.C. § 3553(f). If Macias-Ortiz's counsel had not permitted him to speak to prosecutors, Macias-Ortiz would have had no hope of obtaining the safety valve reduction. Although Macias-Ortiz ultimately failed to receive the reduction, this was not counsel's fault. Macias-Ortiz did not receive the reduction because he lied to prosecutors and law enforcement. After the interview, counsel then allowed Macias-Ortiz to take a polygraph test. Again, counsel permitted this in order to convince the Government that Macias-Ortiz had been telling the truth. Because the Government did not believe his story from the start, Macias-Ortiz lost little by going to the polygraph exam. If he had passed the polygraph, the Government's position may have changed. Instead, Macias-Ortiz's comments to the polygraph examiner confirmed the Government's position. At most, the Government gained from the polygraph interview further evidence of Macias-Ortiz's dishonesty. But even without this additional polygraph evidence, the Court would not have awarded Macias-

Ortiz credit under 18 U.S.C. § 3553. The Government's opposition to the reduction, Macias-Ortiz's own statement to the Court that he knew that Valencia-Soberanes carried a gun in the past, his association with Valencia-Soberanes the afternoon and evening before the drug deal, and the presence in Macias-Ortiz's trunk of a loaded magazine that fit the semi-automatic pistol that Valencia-Soberanes carried into the Days Inn motel room already demonstrated Macias-Ortiz's lack of candor. Therefore, counsel's assistance was neither deficient, nor did it cause prejudice.

## CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Macias-Ortiz's motion (Doc. 1.; Cr. Doc. 111) filed pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his allegedly illegal sentence is **DENIED**. An evidentiary hearing is unnecessary.

The Clerk is directed to enter judgment against Defendant and to close civil case number 8:09-cv-01494-T-24 TGW.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability. Id. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v.

Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Macias-Ortiz has not made the requisite showing in these circumstances.

Finally, because Macias-Ortiz is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

It is so **ORDERED** in Tampa, Florida this 29th day of December, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

Armando Macias-Ortiz
#49333-018
McCrae Correctional Institution
Inmate Mail/Parcels
P.O. Drawer 30
McCrae, Georgia 31055